**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

F I L E D

JAN 3 1 2019

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

JOHN KEITH SMITH,    )
            )
  Plaintiff,     )
            )
v.          )   Civil Action No. 3:16CV293–HEH
            )
WANDA ROLLINS, *et. al*,  )
            )
  Defendants.    )

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

John Keith Smith, a Virginia inmate proceeding *pro se* and *in forma pauperis*,

filed this 42 U.S.C. § 1983 action. As pertinent here, Smith alleges that, while

incarcerated at Sussex II State Prison ("SIISP"), Dr. Inder Gujral provided him with

inadequate medical care for Smith's chronic degenerative joint disease, "which started in

his knees, and has now spread to his hips and lumbar."[1] (Compl. 14.) Specifically,

Smith contends that Dr. Gujral provided inadequate medical care because:

| | |
|---|---|
| Claim 1 | Dr. Gujral incorrectly determined that Smith only had a mild case of arthritis, which he treated with Motrin and Tylenol, and, he waited more than a year and a half to refer Smith to an outside specialist, (*id.* at 16–17); |
| Claim 2 | Dr. Gujral denied Smith a "caretaker" inmate to push Smith's wheelchair, (*id.*); and, |
| Claim 3 | Dr. Gujral failed to order Smith a pair of knee braces (*id.* at 17). |

---

[1] The matter is proceeding on Smith's Particularized Complaint ("Complaint," ECF No. 19).
The Court previously dismissed Smith's claims against other defendants. (ECF Nos. 40, 41.)
Only Smith's claims against Dr. Gujral remain.

The matter is before the Court on the Motion for Summary Judgment filed by Dr. Gujral. Smith has responded. For the reasons set forth below, the Motion for Summary Judgment (ECF No. 42) will be granted.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442,

2

448 (1872)). "[T]here is a preliminary question for the judge, not whether there is

literally no evidence, but whether there is any upon which a jury could properly proceed

to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting

*Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court

a duty to sift through the record in search of evidence to support a party's opposition to

summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P.

56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Dr. Gujral submitted his own

declaration ("Gujral Decl.," ECF No. 43–2) and copies of Smith's medical records

("MR," ECF No. 43–1).[2] Smith has opposed the Motion for Summary Judgment by

submitting his own affidavit ("Smith Aff.," ECF No. 52–1).[3]

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system when citing to the medical records. The Court corrects the capitalization and punctuation for the quotations from Smith's submissions.

[3] The Court notes that after granting Smith multiple extensions of time to respond to the Motion for Summary Judgment, Smith filed a belated request for discovery, which the Court addressed in a separate Memorandum Order. Smith has not properly opposed the Motion for Summary Judgment on the ground that he requires discovery in order to resist summary judgment. Rule 56(f) "permits a court to deny summary judgment or to order a continuance if the nonmovant shows through affidavits that it could not properly oppose a motion for summary judgment without a chance to conduct discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Courts "place great weight on the Rule 56(f) affidavit." *Id.* A "Rule 56(f) affidavit must specifically identify what evidence discovery will turn up and how that evidence will allow the party to oppose summary judgment. The affidavit should 'particularly speci[fy] legitimate needs for further discovery.'" *Hamilton v. Geithner*, No. 1:08CV1112 (JCC), 2009 WL 1683298, at *6 (E.D. Va. June 15, 2009) (alteration in original) (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)). Here, Smith has not submitted a Rule 56(f) affidavit and his Response to Motion for Summary Judgment fails to coherently identify what material the discovery might produce that would allow him to oppose the Motion for Summary Judgment.

3

Of course, the facts offered by affidavit or sworn declaration must also be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statements in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans*, 80 F.3d at 962 (internal citations omitted).

Smith has submitted a number of conclusory statements that run afoul of these prohibitions. For example, Smith swears that "SIISP fails to provide adequate medical care and that Defendant Dr. Gujral is deliberately indifferent to this failure." (Smith Aff. ¶ 13.) Conclusory assertions of this ilk are irrelevant to the summary judgment analysis. *Evans*, 80 F.3d at 962 (citations omitted).

Similarly, Smith complains that "Dr. Gujral continued to prescribe Plaintiff with anti-inflammatory medications, Motrin, Tylenol, and etc., but Defendant Dr. Gujral directly knew that Plaintiff is unable to take anti-inflammatory medications, due to a[n] acid reflux condition and this is indicated on the front cover of the medical charts along with other allergies." (Smith Aff. ¶ 8.) This statement suffers from a number of deficiencies. First, Smith fails to state sufficient facts to indicate that he has personal knowledge as to what is stated on the front cover of his "medical charts." (*Id.*) Second, Smith's medical records from his multiple trips to the VCU Medical Center list his allergies and these records do not indicate that he cannot take anti-inflammatory medication. (*See, e.g.*, MR 20, 41.) Third, Tylenol is not anti-inflammatory

medication.[4]  Fourth, Smith fails to state any instance wherein he alerted Dr. Gujral that he was allergic to any drugs prescribed by Dr. Gujral.

Finally, the Court notes that Smith's Affidavit contains a host of complaints against the Virginia Department of Corrections and other entities and persons who are not parties to this action.  (*See, e.g.,* Smith Aff. ¶¶ 12–27.)  These allegations are largely irrelevant to the Motion for Summary Judgment filed by Dr. Gujral, the sole remaining defendant before the Court.

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment.

## II. PERTINENT FACTS

### A.    Smith's Interactions with Dr. Gujral

From March of 2013 until August 23, 2016, Dr. Gujral served as the Medical Director at SIISP.  (Gujral Decl. ¶ 1.)[5]  According to Dr. Gujral, he first encountered Smith on September 23, 2014, in response to Smith's complaints of leg pain.  (*Id.* ¶ 5.) Dr. Gujral evaluated Smith and made a request for a vascular clinic evaluation.  (*Id.*)

Smith, however, swears that his first encounter with Dr. Gujral was on July 8, 2014.  (Smith Aff. ¶ 4.)  According to Smith, he told Dr. Gujral that he was suffering from "severe, chronic degenerative joint disease condition in both knees."  (*Id.* ¶ 5.)

---

[4] Darren Hein, Univ. of Ill.-Chi. Drug Info. Grp., *Is Tylenol (Acetaminophen) Anti-Inflammatory?*, Healthline (Jul. 25, 2016), https://www.healthline.com/health/pain-relief/is-tylenol-anti-inflammatory.

[5] In his declaration, Dr. Gujral often cites to Smith's medical records.  The Court omits the citation to medical records unless Smith disputes Dr. Gujral's factual assertion.

Smith presented Dr. Gujral "with a copy of a MRI scan report, from Dr. Graham, which clearly indicated that the right knee has a tear of the meniscus, and the left knee [has] a complex tear of the posterior horn of the medial meniscus." (*Id.* ¶ 6.)

When Dr. Gujral next saw Smith on January 21, 2015, Smith "complained of leg, knee, and hip pain, and trouble walking." (Gujral Decl. ¶ 6.) After evaluating Smith, Dr. Gujral referred Smith for physical therapy, recommended that he do exercises and ordered Tylenol for him. (*Id.*)

Smith contends that Dr. Gujral prescribed anti-inflammatory medications, like Motrin for Smith, even though according to Smith, Smith's medical chart reflected that Smith could not take such medication because of his acid-reflux. (Smith Aff. ¶ 8.)[6]

Dr. Gujral ordered x-rays and later discussed them with Smith. (*Id.*) During this discussion, Smith contends that Dr. Gujral told Smith "that he only has a mild case of arthritis." (*Id.*) Smith fails to provide any date for when the x-rays were ordered and when the discussion allegedly occurred. Nevertheless, the record indicates that x-rays were ordered during Smith's meeting with Dr. Gujral on March 10, 2015. (Gujral Decl. ¶ 7; MR 3.) On that date, Smith was in a wheelchair complaining of back pain. (Gujral Decl. ¶ 7.) Dr. Gujral ordered an x-ray of Smith's back, hip, and knee and again referred Smith to physical therapy. (*Id.*)

On July 22, 2015, Smith saw medical personnel and complained that he hit his head and knee after a fall on the way to a physical therapy appointment. (MR 4.)

---

[6] As noted above, Smith's medical records do not indicate that he is allergic to anti-inflammatory medications. (MR 20, 41.)

Dr. Gujral next saw Smith on August 18, 2015. (Gujral Aff. ¶ 9.) Smith complained of back pain and spasms. (*Id.*) Dr. Gujral evaluated Smith and recommended that Smith "stay on his pain medicine and continue exercises." (*Id.*) Dr. Gujral examined Smith's knee and ordered an x-ray. (*Id.*)

When Dr. Gujral next saw Smith on October 5, 2015, Smith requested to "see a specialist for his back and that he receive a 'caretaker' or a person to assist in pushing his wheelchair." (*Id.* ¶ 10.) Dr. Gujral completed the appropriate paperwork for Smith to be seen by an orthopedist. (*Id.*) Smith was scheduled to see an orthopedist at Virginia Commonwealth University Medical Center ("VCU") on January 11, 2016. (*Id.*)

Dr. Gujral saw Smith on November 15, 2015 for an ingrown toe nail and dry skin. (*Id.* ¶ 11.) Smith did not mention any leg or back pain during this appointment. (*Id.*)

Smith was scheduled to be seen by Dr. Gujral on November 23, 2015, but Smith refused to appear for this appointment. (*Id.* ¶ 12.)

Dr. Gujral next saw Smith on January 4, 2016 "for complaints of weakness, tiredness, and fatigue." (*Id.* ¶ 13.) Dr. Gujral informed Smith of his impending orthopedic appointment and ordered lab work and a urine test. (*Id.*)

On January 11, 2016, Smith was seen by a VCU orthopedist. (*Id.* ¶ 14.) The orthopedist prescribed Robaxin, a muscle relaxer, and Aleve. (*Id.*) The orthopedist further recommended that Smith "use a cane for walking, physical therapy, and to return in four months for a follow-up appointment." (*Id.*) Smith already had a cane and was taking Aleve. (*Id.*) Dr. Gujral ordered Robaxin for Smith. (*Id.*)

7

On January 26, 2016, Smith was scheduled to see Dr. Gujral for a follow-up to his orthopedic visit. (*Id.* ¶ 15.) Smith did not appear for his appointment. (*Id.*) Smith asserts that the officer on his pod never alerted him to this appointment. (Smith Aff. ¶ 32.)

Dr. Gujral saw Smith on February 29, 2016, in conjunction with Smith's complaints of congestion and sinus problems. (Gujral Decl. ¶ 16.) Dr. Gujral prescribed medication to treat Smith's sinus problems and informed Smith of the orthopedist's recommendations. (*Id.*) That same day, Dr. Gujral completed the paperwork to have Smith re-examined by an orthopedist in four months. (*Id.* ¶ 17.)

Smith was approved to see an orthopedist on May 9, 2016. (*Id.* ¶ 18.)

On April 19, 2016, Dr. Gujral saw Smith at a chronic care appointment to monitor Smith's diabetes, hypertension, and chronic obstructive pulmonary disease ("COPD"). (*Id.* ¶ 19.) Smith complained about back pain and his shoulder pain. (*Id.*) Dr. Gujral advised Smith to do range of motion exercises. (*Id.*) Dr. Gujral ordered labs and reviewed the results. (*Id.*)

On May 9, 2016, Smith was seen by an orthopedist at VCU. (*Id.* ¶ 20.) Smith was "diagnosed with lumbar spondylosis and severe spinal stenosis. The orthopedist recommended [that Smith] receive Neurontin, have an MRI done of his lumbar spine, and to be seen in four weeks after the MRI was done." (*Id.*)

On May 11, 2016, Dr. Gujral completed the necessary paperwork for the MRI of Smith's lumbar spine and to have Smith seen by VCU Orthopedics in four weeks after

the MRI. (*Id.* ¶ 21). The paperwork was approved. (*Id.*) Dr. Gujral, however, was not responsible for scheduling the actual appointment. (*Id.*)

Dr. Gujral next saw Smith on May 24, 2016. (*Id.* ¶ 22.) On that date, Smith complained of "swelling in both of his legs, as well as a rash and itching." (*Id.*) Smith also requested someone to push his wheelchair. (*Id.*) Dr. Gujral evaluated Smith. (*Id.*) Dr. Gujral denied Smith's request for someone to push his wheelchair. (*Id.*) Dr. Gujral informed Smith "that he was overweight and there was nothing wrong with his upper extremities, so it was best for him to continue pushing his own wheelchair to get some exercise and maintain muscle and strength in his upper body." (*Id.*)[7] Dr. Gujral prescribed cream for the itching and noted that Smith was scheduled for a follow-up with the orthopedist and scheduled to have an MRI. (*Id.*)

On July 28, 2016, Dr. Boakye, another physician, again requested the scheduling of the MRI that previously had been approved. (*Id.* ¶ 23.)

Smith was "seen by Dr. Militana on July 29, 2016. Dr. Militana evaluated [Smith's] pain and wrote in [Smith's] record that this MRI had been cancelled and ordered for the scheduling clerk [to] call and schedule the MRI that had been approved." (*Id.* ¶ 24.)

On August 5, 2016, the scheduling clerk scheduled Smith's MRI for September 16, 2016. (*Id.* ¶ 25.)

---

[7] Smith contends that pushing himself in his wheelchair increases his back and knee pain. (Smith Aff. ¶ 37.)

Dr. Gujral saw Smith on August 16, 2016. (*Id.* ¶ 26.) Smith asked about his MRI, treatment for his itching, and complained of gas. (*Id.*) Dr. Gujral informed Smith that his MRI was being scheduled and provided medications for his other ailments. (*Id.*)

On August 22, 2016, Dr. Gujral saw Smith for the last time. (*Id.* ¶ 27.) Smith "again asked for someone to push his wheelchair." (*Id.*) Dr. Gujral again explained to Smith that "it was best for him to continue to push his own wheelchair to maintain his upper body strength and that there was nothing wrong with his upper [body] preventing him from pushing himself." (*Id.*) On August 23, 2016, Dr. Gujral left SIISP and had no further contact with Smith. (*Id.* ¶ 28.)

According to Dr. Gujral, Smith never asked him for knee braces. (*Id.* ¶ 33.) Furthermore, Dr. Gujral contends that, due to security concerns at SIISP, even if Smith had asked for knee braces, he would not have been able to order Smith braces that contained metal hardware. (*Id.*)

## B.     Smith's Medical Care after Dr. Gujral's Departure from SIISP

On September 16, 2016, an MRI was taken of Smith's back. (*Id.* ¶ 29.) On October 3, 2016, Smith went to VCU for a follow-up appointment with respect to the MRI. (*Id.* ¶ 30.) The orthopedist diagnosed Smith "with spinal stenosis and degenerative joint disease of the lumbar spine." (*Id.*) "The orthopedist noted that [Smith] needed a medical detail to help push his wheelchair, an epidural steroid injection, and physical therapy for his lower back." (*Id.*)

On October 6, 2016, at SIISP, Dr. Militana reviewed the recommendations from the orthopedist. (*Id.* ¶ 31.) Dr. Militana planned to follow-up with the orthopedist as needed. (*Id.*)

On January 23, 2017, Smith had an additional follow-up appointment with VCU Orthopedics. (*Id.* ¶ 32.) "At this appointment, the orthopedist noted no neurological compromise, no evidence of radiculopathy, suggested that [Smith] have assistance with his wheelchair if available, use of NSAIDS or Tylenol as tolerated for pain, use of Neurontin, and plans to schedule epidural steroid injections for back pain." (*Id.* ¶ 32.)

On March 29, 2017, Smith received the recommended steroid injection. (MR 56.) Smith noted that the injection did not help. (*Id.* at 60.) In November of 2017, Smith was sent to VCU for a surgical consultation. (*Id.*) The doctor at VCU concluded that Smith did "not need neurosurgery intervention." (*Id.*)

## III. ANALYSIS

### A. Smith's Demands for Injunctive Relief Against Dr. Gujral Are Moot

The record reflects that Dr. Gujral is no longer employed at SIISP where Smith is confined. Thus, Dr. Gujral is no longer in a position to provide Smith with the knee braces or a caretaker as Smith requested in his Complaint. (Compl. 18.) Therefore, Smith's demands for injunctive relief with respect to Dr. Gujral are moot. *See Petersen v. Stommel*, No. 08–CV–00668–ZLW–KMT, 2009 WL 2009000, at *1 (D. Colo. July 9, 2009); *Felder v. Cross*, No. 3:95–CV–595RM, 1998 WL 792196, at *2 (N.D. Ind. Sept. 8, 1998). Accordingly, Smith demands for injunctive relief with respect to Dr. Gujral will be dismissed without prejudice as moot.

## B.     Eighth Amendment Principles

To survive a motion for summary judgment on an Eighth Amendment claim,

Smith must demonstrate that Dr. Gujral acted with deliberate indifference to his serious

medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need

is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is

so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v.

Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to

demonstrate that a particular defendant actually knew of and disregarded a substantial

risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Deliberate indifference is a very high standard—a showing of mere negligence will not

meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*,

429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official
> knows of and disregards an excessive risk to inmate health or safety; the
> official must both be aware of facts from which the inference could be drawn
> that a substantial risk of serious harm exists, and he must also draw the
> inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a

substantial risk of harm is not enough. The prison official must also draw the inference

between those general facts and the specific risk of harm confronting the inmate."

*Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).

Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm. . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### 1. Claim 1

Initially, Smith complains that Dr. Gujral acted with deliberate indifference by suggesting that Smith merely had arthritis which could be treated with anti-inflammatory medications. The record, however, reflects that Dr. Gujral did not act with indifference to Smith's medical complaints. By either Smith's or Dr. Gujral's account, upon hearing of Smith's complaints, Gujral promptly ordered a vascular consultation and then x-rays. When Dr. Gujral next saw Smith in January of 2015, Smith was complaining of leg, knee, and hip pain, and trouble walking. After evaluating Smith, Dr. Gujral referred

13

Smith for physical therapy, recommended that he do exercises and ordered Tylenol for him.

Although Smith contends that he could not take Motrin, he fails to direct the Court to evidence that he alerted Dr. Gujral to this fact. *Farmer*, 511 U.S. at 837. Moreover, Smith fails to direct the Court to evidence reflecting how often he was prescribed Motrin.

Smith notes that the record fails to reflect that he actually received physical therapy. Smith, however, does not swear that he did not receive physical therapy or that he alerted Dr. Gujral to fact that he was not receiving physical therapy.[8] *See id.* Thus, these circumstances fail to support an inference of deliberate indifference on the part of Dr. Gujral.

When Smith continued to complain of back pain in October of 2015, Dr. Gujral promptly filled out the paperwork to have Smith examined by an outside orthopedist. While it took roughly three months for the examination to occur, Smith fails to demonstrate the delay was the product of Dr. Gujral's indifference or that this delay can support an Eighth Amendment claim. Where an inmate's inadequate medical care claim is predicated upon a delay in care, the inmate must also establish that the delay in the provision of medical care "resulted in substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *id.* at 754 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)) (identifying

---

[8] Although the medical record does not contain information from Smith's physical therapy appointments, it does suggest he was receiving such appointments. Specifically, on July 22, 2015, Smith saw medical personnel and complained that he hit his head and knee after a fall on the way to a physical therapy appointment. (MR at 4.)

this additional requirement of the objective prong); *see Webb v. Hamidullah*, 281 F.

App'x 159, 166–67 n.13 (4th Cir. 2008). "[T]he substantial harm requirement may be

satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v.*

*Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citations omitted); *see Coppage v. Mann*,

906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Cty. Corr. Inst'l Inmates v.*

*Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Here, Smith fails to demonstrate that the delay in arranging the orthopedic

consultation caused him substantial harm. After the orthopedic consultation the only

change in treatment for Smith's back and joint pain was the prescription of Robaxin, a

muscle relaxer. Smith fails to submit any evidence that suggests the Robaxin

significantly alleviated his pain.[9] Accordingly, with respect to his complaint about the

delay in referring him to a specialist, Smith fails to satisfy either the objective or

subjective prong for an Eighth Amendment claim. Additionally, with respect to his

general complaints about Dr. Gujral's medical care, Smith fails to demonstrate that Dr.

Gujral acted with deliberate indifference. Claim 1 will be dismissed.

### 2. Claim 2

In Claim 2, Smith complains that Dr. Gujral acted with deliberate indifference by

failing to provide Smith a caretaker to push his wheelchair. Smith has a number of

---

[9] Indeed, Smith fails to demonstrate that accelerating any of his specialist visits would have allowed him to avoid a substantial harm. The surgical consultation concluded that Smith was not a good candidate for surgery and the steroid injected provided to Smith failed to alleviate Smith's pain.

competing medical ailments. For example, Smith is overweight and has diabetes. While

Smith contends that pushing his own wheelchair was uncomfortable, Dr. Gujral believed

that because of Smith "various comorbidities and body habitus it was best for [Smith] to

continue to push his own wheelchair for needed aerobic exercise and to help maintain his

upper body strength." (Gujral Decl. ¶ 34.) Smith's disagreement with Dr. Gujral's

medical judgment that Smith's various medical needs were best addressed by requiring

Smith to propel his own wheelchair fails to demonstrate deliberate indifference. *See*

*Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6).[10] Accordingly, Claim 2 will

be dismissed.

### 3.    Claim 3

In Claim 3, Smith faults Dr. Gujral for failing to order him a pair of knee braces.

Smith, however, fails to demonstrate that he has a serious medical need for knees braces.

*Iko*, 535 F.3d at 241 (quoting *Henderson*, 196 F.3d at 846). Furthermore, Smith fails to

demonstrate that Dr. Gujral acted with deliberate indifference to any need Smith may

have had for knee braces. Dr. Gujral does not even recall Smith ever asking him for knee

braces. Nevertheless, assuming as we must for purposes of summary judgment that

Smith did ask for knee braces, the record fails to support an inference that Dr. Gujral was

---

[10] The Court recognizes that after Dr. Gujral departed from SIISP, the outside orthopedist recommended that Smith be provided with a caretaker to push his wheelchair. Given the circumstances before the Court this fact fails to demonstrate deliberate indifference on the part of Dr. Gujral. If an inmate's "disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a doctor disagrees with the professional judgment of another *doctor*. There may, for example, be several acceptable ways to treat an illness." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (emphasis omitted); *see United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011).

subjectively aware that the failure to provide them posed a substantial risk of serious harm to Smith's person. Dr. Gujral evaluated and examined Smith over a two-year period. Smith had every opportunity to repeat his complaint about the lack of knee braces. Smith failed to do so. Nothing in the record suggests that the multiple examinations of Smith by Dr. Gujral or the other physicians revealed that Smith required knee braces. Thus, Smith fails to demonstrate that Dr. Gujral acted with deliberate indifference. Accordingly, Claim 3 will be dismissed.

## IV. CONCLUSION

Smith's demand for injunctive relief will be dismissed without prejudice as moot. Smith's claims against Dr. Gujral will be dismissed. The Motion for Summary Judgment (ECF No. 42) will be granted. The action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: Jan. 31, 2019
Richmond, Virginia